IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON / GREENWOOD DIVISION

| | | |
|---|---|---|
| Dr. Delancy Bennett, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 8:24-cv-1041-BHH |
| v. | ) | |
| | ) | **ORDER** |
| Clemson University, Dr. Jim Clements, Dr. Robert Jones, Wendy York, Dr. Ryan Mullins, Dr. Danny Weathers, and Dr. Jennifer Siemens, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Dr. Delancy Bennett ("Plaintiff"), a former employee of Clemson University's ("Clemson") College of Business, brings this action alleging claims for breach of contract against Clemson; retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") against Clemson; race discrimination in violation of Title VII against Clemson; and violation of his due process rights against the individual Defendants. (ECF No. 2-1.) Plaintiff originally filed this action in the Court of Common Pleas for Pickens County. (*Id.*) Defendants removed the case to this Court on the basis that Plaintiff's claims fall under this Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331. (ECF No. 2.)

Now before the Court is Defendants' motion for summary judgment. (ECF No. 37.) This motion has been fully briefed. (ECF Nos. 40-43, 47.) Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B), and the Local Rules, D.S.C., this motion was referred to a United States Magistrate Judge for consideration.

On August 11, 2026, United States Magistrate Judge William S. Brown issued a Report and Recommendation ("Report") (ECF No. 51), recommending that the Court grant Defendants' motion for summary judgment. (ECF No. 37.)

On August 25, 2026, Plaintiff filed objections to the Report. (ECF No. 54.) On September 17, 2026, Defendants filed a reply to Plaintiff's objections. (ECF No. 57.)

## STANDARDS OF REVIEW

### I. Summary Judgment

A court shall grant summary judgment if a party shows that there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

### II. The Magistrate Judge's Report

The magistrate makes only a recommendation to this Court. The recommendation has no presumptive weight, and responsibility for making a final determination remains with this Court. *Mathews v. Weber,* 423 U.S. 261, 270-71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report to which a specific objection is made, and this Court may "accept, reject, or modify, in whole or in

part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate with instructions." *Id.* In the absence of specific objections, the Court reviews the matter only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

**BACKGROUND AND FACTUAL ALLEGATIONS**

The Report sets forth in detail the relevant background and factual allegations, and no party objects to this portion of the Report. The Court finds no clear error in this portion of the Report and, therefore, incorporates the background and factual allegations as set forth in the Report without further recitation.

**DISCUSSION**

**I. The Magistrate Judge's Findings**

In his Report, the Magistrate Judge considered the parties' arguments and the evidence and determined that Defendants are entitled to summary judgment on Plaintiff's claims. Specifically, as to Plaintiff's breach of contract claim involving a decision on tenure, the Magistrate Judge found dismissal warranted due to Plaintiff's failure to point to specific language or terms in the alleged contracts that were breached. (ECF No. 51 at 15.) The Report addressed each piece of evidence Plaintiff cited in support of this claim and noted the absence of any explanation by Plaintiff as to how the cited testimony or

conduct by Defendants reflects a breach of the alleged contracts with Plaintiff. (*Id.* at 15-17.)

Next, the Magistrate Judge found that Plaintiff cannot avoid summary judgment on his Title VI race discrimination claim for denying his application for promotion and tenure under the burden-shifting framework set forth in *McDonnel Douglas*[1] or the mixed-motive framework. (*Id.* at 18-26.) As to the former framework, the Report found that Plaintiff's claim fails on the fourth element wherein "Plaintiff relies solely on comparators to show an inference of race discrimination." (*Id.* at 19.) Specifically, as to the seven comparators identified by Plaintiff, the Magistrate Judge concluded that "Plaintiff has failed to present evidence that these comparators dealt with the same decision-makers regarding tenure or explain how the comparators engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or Clemson's treatment of them for it." (*Id.* at 21.) The Report found Plaintiff's "bald assertions" that these comparators were subject to the same standards and process but were treated more favorably, "are insufficient to show different treatment from similarly situated employees outside his protected class." (*Id.* (further noting that Plaintiff "has submitted what appears to be screenshots from Clemon's website containing biographical information for each of these comparators").) The Report further acknowledged Plaintiff's reliance on "a letter from when Dr. Siemens (who is white) obtained tenure, Dr. Siemens' deposition testimony about what guidance she looked to when she was seeking tenue, [] Provost Jones' deposition testimony regarding standards at Clemson climbing over time" and, generally, "Dr. Eli Jones' expert report." (*Id.* at 21, 21 n.5.) However, the Magistrate Judge found that

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Plaintiff failed to explain how this evidence shows similarly situated comparators, noting that a plaintiff shall direct the Court to a concise statement of material facts in dispute in opposing summary judgment, as it is not the Court's job to scour the record for details to support a party's argument. (*Id.*)

Turning to the mixed-motive framework, the Magistrate Judge similarly found that Plaintiff's arguments and statements, without citation to the record, are insufficient, especially where "Defendant has pointed to numerous places in the record where the Tenure, Promotion, and Reappointment ("TPR") Standards set forth requirements for research quality and where individuals at Clemson communicated to Plaintiff that he needed to improve his research." (*Id.* at 22-23.) The Report explained why Plaintiff's reliance on the Merit Pay Rubric fails to show that race was a motivating factor in Defendants' decision to deny tenure. (*Id.* at 23-24.) The Report then addressed Plaintiff's assertion that "there is evidence of race discrimination because decisionmakers altered governing tenure standards midstream, applied unwritten and shifting criteria to his research, discounted diversity-related service contributions, denied tenure-clock extensions routinely granted to others, and evaluated Plaintiff more harshly than at least seven white comparators who received tenure or reappointment." (*Id.* at 24.) As to this assertion, the Report found that Plaintiff has put forth no evidence of these allegations and that Plaintiff's citations elsewhere in his response "do not support these propositions." (*Id.*) Moreover, the Report found that Defendants have "pointed to ample evidence that individuals at Clemson repeatedly informed Plaintiff that his research was not sufficient for tenure." (*Id.* at 25.) Thus, the Magistrate Judge concluded that "Plaintiff has not presented sufficient evidence, direct or circumstantial, for a reasonable jury to find that

his race played a motivating factor in Defendants' decision to deny him tenure." (*Id.* at 25-26.)

As to Plaintiff's retaliation claim, the Report noted that, as an initial matter, "it is unclear if Plaintiff engaged in protected activity." (*Id.* at 27; *see id.* at 27-28 (discussing the evidence Plaintiff relies on and stating that "none of the cited evidence paints a clear picture").) Ultimately, after viewing the evidence in the light most favorable to Plaintiff, the Magistrate Judge "accept[ed] that Plaintiff engaged in protected activity," but found that "Plaintiff has failed to show that a reasonable jury could find a causal connection between the protected activity and the denial of tenure." (*Id.* at 28-29.) The Magistrate Judge noted that "Plaintiff again cites to deposition testimony that does not reflect a temporal proximity between any protected activity and Plaintiff's denial of tenure," and he highlighted the fact that "Plaintiff has not set forth the timing of when he engaged in the alleged protected activity." (*Id.* at 30.) Finally, the Magistrate Judge found that Dr. Eli Jones' expert report does not support the retaliation claim "because Plaintiff has failed to show that he was subject to increasing standards following internal complaints." (*Id.* at 30.)

Lastly, as to Plaintiff's procedural due process claim against the individual Defendants, in their individual capacities, the Report addressed the case law Plaintiff relied on but ultimately found that "Plaintiff has not shown that a reasonable jury could conclude that he had a property interest in continued employment," as required to demonstrate a procedural due process violation. (*Id.* at 31-32.)

For all the aforementioned reasons, the Magistrate Judge recommended that this Court grant Defendants' motion for summary judgment on all of Plaintiff's claims.

## II. Plaintiff's Objections

Plaintiff's **first** objection is to the Magistrate Judge's findings that Plaintiff "has failed to point to specific language in any document indicating what the precise expectations were for teaching, research, and service and how he met those standards" and has failed to point "to the relevant portions of the governing documents or evidence that he satisfied the requirements in those documents for tenure." (ECF No. 54 at 2 (quoting ECF No. 51 at 23 (analyzing Plaintiff's race discrimination claim under a mixed motive framework), 29 (analyzing Plaintiff's retaliation claim).) Plaintiff then asserts three related objections. Plaintiff's **second** objection is to the Magistrate Judge's finding that Plaintiff has failed to set forth evidence that Clemson "altered governing tenure standards midstream, [and] applied unwritten and shifting criteria to his research." (ECF No. 54 at 5 (quoting ECF No. 51 at 24 (analyzing Plaintiff's race discrimination claim under a mixed motive framework).) And Plaintiff's **final two objections** are that the Magistrate Judge erred in concluding that Plaintiff has failed to identify specific contractual language or terms that Clemson breached and erred because, according to Plaintiff, the Magistrate Judge determined that the breach of contract claim fails "because Clemson retained discretion over whether to award tenure." (ECF No. 54 at 31-35.)

Notably, instead of directing this Court to specific evidence with citations to the record or law to support his objections, Plaintiff merely rehashes his previous arguments and, again, references evidence in the record that the Magistrate Judge specifically considered and found insufficient to support Plaintiff's claims. (*See, e.g.,* ECF No. 51 at 15-16, 22-25); *see Nealy v. Warden, Lee Corr. Inst*., No. 1:18-CV-00777-RBH, 2018 WL 6695713, at *1 (D.S.C. Dec. 20, 2018) ("[O]bjections that merely rehash arguments

previously raised and considered by the Magistrate Judge are insufficient to direct the Court to a specific error."). Nevertheless, in the interest of fairness, the Court has conducted a *de novo* review of these findings, the evidence, and the applicable law. Upon such review, the Court finds no error and fully agrees with the Magistrate Judge that Plaintiff's breach of contract fails under applicable law as detailed in the Report.

Next, Plaintiff's **third and fourth objections** to the Report are related to his retaliation claim. Plaintiff objects to the Magistrate Judge's finding that, "even assuming Plaintiff engaged in protected activity, Plaintiff has failed to show that a reasonable jury could find a causal connection between the protected activity and the denial of tenure." (ECF No. 54 at 9 (quoting ECF No. 51 at 28-29).) He further objects to the Magistrate Judge's finding that he "has not set forth the timing of when he engaged in the alleged protected activity." (ECF No. 54 at 13 (quoting ECF No. 51 at 30).)

After *de novo* review, the Court again finds that Plaintiff does not explain how these findings are in error. Rather, Plaintiff references the same evidence that the Magistrate Judge carefully examined, and which evidence the Magistrate Judge found paints an unclear picture of whether and when Plaintiff engaged in protected activity and fails to show a causal connection between the alleged protected activity and the denial of tenure. (*Compare, e.g.,* ECF No. 54 at 9 (claiming that the Magistrate Judge overlooked evidence that Plaintiff complained of race discrimination to individuals who participated in his tenure review) *with* ECF No. 51 at 27-30 (examining what the cited evidence in fact shows and explaining why such evidence is insufficient).) Notably, Plaintiff does not address the Magistrate Judge's findings about the purported date of the letter from the Commission on the Black Experience, contending instead that his mere assertion of the date in his

opposition brief is sufficient. (*See* ECF No. 51 at 27-28; ECF No. 54 at 14-15.) After review, the Court finds no merit to these objections.

Plaintiff's **fifth** objection is that the Magistrate Judge improperly considered Plaintiff's evidence "in discrete categories" although "Plaintiff's mixed-motive theory . . . was expressly based on the cumulative significance of the circumstantial evidence." (ECF No. 54 at 16.) After *de novo* review, the Court finds no merit to this objection. Instead, the Court finds that the Magistrate Judge carefully examined each argument put forth by Plaintiff and, despite Plaintiff's failure to cite to the record, the Magistrate Judge identified and discussed each piece of evidence that Plaintiff could have cited. However, at each turn, the Magistrate Judge found no relevant evidence. As summarized by Defendants in their reply to Plaintiff's objections, the Magistrate Judge found:

> • "Plaintiff has failed to point to specific language in any document indicating what the precise expectations were for teaching, research, and service and how he met those standards";
>
> • "the ratings that Plaintiff highlights are under the [irrelevant] Merit Pay Rubric as opposed to the [relevant] TPR Standards";
>
> • "Clemson praising one of Plaintiff's service efforts does not indicate that the totality of his service satisfied tenure standards"; and,
>
> • Plaintiff "asserts that there is evidence of race discrimination because decisionmakers altered governing tenure standards midstream, applied unwritten and shifting criteria to his research, discounted diversity-related service contributions, denied tenure-clock extensions routinely granted to others, and evaluated Plaintiff more harshly than at least seven white comparators who received tenure or reappointment [but] Plaintiff did not cite to the record in the mixed-motive analysis, and Plaintiff's citations throughout the Response do not support these propositions."

(ECF No. 57 at 8 (quoting ECF 51 at 23-25).) Thus, the Court finds that the issue is not that the Magistrate Judge failed to consider the evidence together to permit the inference

Plaintiff advances, but that Plaintiff failed to put forth evidence that would convince a trier of fact to accept that race played a motiving role in Plaintiff's tenure decision.

Plaintiff's **sixth objection** is to the Magistrate Judge's finding that Plaintiff's comparator evidence was insufficient. (ECF No. 54 at 19.) Plaintiff contends that he is not required "to identify a tenure candidate whose review involved precisely the same individuals at every level of a multistage academic review process" and that "[t]he comparator evidence should . . . be evaluated according to the characteristics material to the challenged decision." (*Id.* at 20-21.) As to this evidence, the Magistrate Judge noted that Plaintiff does not offer evidence of the races of these comparators, beyond Dr. Siemens, and that Plaintiff's sole evidence for comparison is limited to "what appears to be screenshots from Clemson's website containing biographical information for each of these comparators." (ECF No. 51 at 20-21.) Even if this Court were to accept Plaintiff's comparator standard, the fact remains that Plaintiff has not provided evidence or analysis to support his assertion that these individuals are similarly situated and were treated more favorably than he. Indeed, Plaintiff's asserts:

> [t]hese comparators were subject to the same Department Standards and tenure process, yet were treated more favorably than Plaintiff. The record reflects no material differences in qualifications or performance sufficient to explain the disparate outcomes.

(ECF No. 43 at 19.) But Plaintiff does not direct the Court to evidence in support of these factual assertions about the circumstances and treatment of these individuals and instead relies on his bald narrative without citations to any evidence of record. (*See* ECF No. 51 at 20-21, 21 n.5 (discussing Plaintiff's failure to explain how the evidence in the record shows similarly situated comparators).) Thus, the Court overrules this objection and

further finds that Plaintiff has not created an inference of discrimination through comparator evidence.

Plaintiff's **seventh** objection is to the Report's conclusion that Clemson's assessment of Plaintiff's research does not support an inference of discrimination. (ECF No. 54 at 22.) Plaintiff then repeats his argument made in his opposition brief that he has put forth evidence that "Clemson applied its journal-quality benchmarks inconsistently" and that "[t]he Stewart and Lewis ranking provides a concrete example." (*Id.*) But, again, Plaintiff provides no citation to evidence in the record supporting this assertion. (*Id.*; *see* ECF No. 43 at 20-21.) After *de novo* review, the Court agrees with the Magistrate Judge's conclusion and finds that Plaintiff has not produced circumstantial evidence that undermines the credibility of the concerns consistently asserted by Defendants regarding Plaintiff's research throughout his employment with Clemson.

Plaintiff's **eighth objection** is that Magistrate Judge should have considered the differences in his ratings under the Merit Pay Rubric and his TPR ratings as evidence of discrimination. (ECF No. 54 at 22-23.) He claims that he "offered this discrepancy as one part of his broader evidence that Clemson's assessment of his performance materially changed during the tenure process." (*Id*. at 23). After *de novo* review, the Court does not agree that the Magistrate Judge overlooked this evidence, and the Court finds no merit to this objection. Plaintiff cites to Dr. Siemens' testimony that she did not believe that if a journal was sufficient to receive merit pay, it would necessarily fall within the quality category for tenure. (ECF No. 43-9 at 78:21-79:14.) Dr. Siemens explained that the Merit Pay Rubric was based on research activities and so a professor might have research activity without it being a journal that the TPR Committee would consider high quality. (*Id*.)

Dr. Siemens explained that the Merit Pay Rubric and the TPR Committee have different intended purposes, with the Merit Pay Rubric helping department chairs assess faculty's efforts to award pay fairly and the TPR Committee assessing journal quality in regard to a cumulative portfolio of research that would be necessary for tenure. (*Id.*) Given the evidence in the record regarding the Merit Pay Rubric and TPR Standards, the Magistrate Judge found that "Plaintiff's merit pay rankings do not show that race was a motivating factor in Defendant's decision to deny Plaintiff tenure." (ECF No. 51 at 23-24.) Plaintiff claims that this finding was error because it resolves a factual issue and "a jury could reasonably consider . . . whether the discrepancy supports Plaintiff's contention that his performance was subjected to increasingly adverse evaluation as he approached tenure." (ECF No. 54 at 24.)

After *de novo* review, the Court finds no error. Plaintiff's assertion or belief that is contrary to the evidence in the record does not create a factual issue for the jury to decide. Here, as properly found by the Magistrate Judge, the evidence simply does not create a genuine dispute of material fact as whether *Plaintiff's race* motivated Defendants' decision to deny Plaintiff tenure.

Plaintiff's **ninth objection** is that, although the Magistrate Judge acknowledged that the 2011 TPR standards applied to Plaintiff's application for tenure, the Magistrate Judge nevertheless failed to reconcile evidence that Defendants actually applied some other standard. (*Id.* at 24-25.) As noted by Defendants, this argument essentially recycles the arguments made in Plaintiff's first and second objection, discussed above. Thus, the Court finds no merit to this objection for the same reasons set forth above.

Plaintiff's **tenth objection** to the Report is that the Magistrate Judge resolved competing evidence of external reviews regarding the quality of Plaintiff's research "by adopting Clemon's characterization of the[se] reviews as merely 'mixed.'" (ECF No. 54 at 26-27.) Plaintiff argues that "evidence that an external reviewer considered Plaintiff's scholarly contribution stronger than the reputation of its publication outlet suggested is relevant to whether Clemson's heavy reliance upon journal rankings accurately reflected the research-quality standard governing Plaintiff's candidacy." (*Id.* at 27). In response, Defendant notes:

> Plaintiff ignores the magistrate judge's citation to the record regarding what other external reviewers wrote: that "it is difficult to identify a strong research stream for Dr. Bennett"; that "[n]one of Dr. Bennett's publications appear on the Financial Times or UT-Dallas lists of top journals by discipline – which would indicate unassailable evidence of research excellence. If there is an area to be critical of his case from promotion with tenure this is it." [sic]; and "if the department is attempting to produce more empirical work in highly regarded journals, Dr. Bennett's work does not fare well." (ECF 51 at p. 10) In other words, Plaintiff had both supporters and detractors among the external reviewers.

(ECF No. 57 at 13.) Defendant argues that this is the kind of evidence that led the Second Circuit to opine:

> Even within a single department comparisons are difficult because the number of decisions within a particular period may be quite few, the decisions sometimes may be non-competitive and tenure files typically contain positive as well as negative evaluations, often in extravagant terms, sufficient to support either a grant or denial of tenure. *Zahorik v. Cornell Univ.*, 729 F.2d 85, 93 (2d Cir. 1984) (emphasis added).

(*Id.*) Defendant also notes:

> [t]he Fourth Circuit cited *Zahorik* in support of its statement that while courts "commence with the premise that while Title VII is available to aggrieved professors, we review professorial employment decisions with great trepidation." *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 376 (4th Cir. 1995). "Mere disagreement 'about the scholarly merits of a candidate's academic work, the candidate's teaching abilities, or the academic needs of

> the department' is insufficient to carry the plaintiff's burden of persuasion." *Schley v. Coll. of Charleston*, 1995 WL 323962, at *11 (D.S.C. Feb. 3, 1995), *aff'd*, 83 F.3d 416 (4th Cir. 1996) (quoting *Zahorik*, 729 F.2d at 94).

(*Id.*) Thus, Defendant argues that "the fact that some external reviewers gave Plaintiff more favorable reviews than others does not move the needle. The external reviews were, indeed "mixed," which comes as no surprise at all in an academic setting and creates no question of fact." (*Id.* at 13-14.)

After *de novo* review, the Court finds no support for Plaintiff's claim that Magistrate Judge resolved competing evidence about the quality of Plaintiff's publications. Rather, the Court finds that the Report accurately outlined the evidence on this issue, as Plaintiff even acknowledges in his objection. (ECF No. 51 at 9-11; *see* ECF No. 54 at 26 26.) Thus, the Court overrules this objection.

Plaintiff's **eleventh objection** to the Report is that the Magistrate Judge applied an "overly narrow definition of Plaintiff's protected property interest" in recommending that the Court deny his due process claim. (ECF No. 54 at 27.) Plaintiff claims that the Magistrate Judge improperly ended his review of this claim after he determined that Plaintiff has "no automatic entitlement to tenure." (*Id.*) In response, Defendants note that "that statement was merely an establishing principle. The magistrate then thoughtfully reviewed the two cases cited by Plaintiff . . . before finding them unsupportive of Plaintiff's due process claim." (ECF No. 57 at 14.)

After *de novo* review, the Court agrees with Plaintiff that "[h]is claim should not be resolved solely by characterizing the asserted property interest as a right to tenure." (ECF No. 54 at 29.) However, a review of the Report reveals that the Magistrate Judge considered Plaintiff's argument that he has a property interest in continued employment.

Indeed, the Magistrate Judge examined the sole case Plaintiff cited in support of this argument, *Wilkinson v. Sch. Bd. of Cnty. of Henrico*,[2] and found it distinguishable because, here, Plaintiff's offer letter unequivocally provided that continued employment was not guaranteed. (ECF No. 51 at 32.) The Magistrate Judge also noted that "Plaintiff has not pointed to any portion of his employment contract or any law indicating that his employment could only be terminated for good cause," in contrast to the plaintiff in *Wilkinson*. (*Id.*)

Plaintiff now argues, for what appears to be the first time and without citation to any supporting law, that the Magistrate Judge should have determined whether the "defined probationary period, a tenure clock governed by specified rules, and procedures governing the [tenure] review" created an independent entitlement to continued employment. (ECF No. 54 at 29.) Plaintiff does expand on why this Court should find that these rules and procedures entitled him to continued employment. Nonetheless, the Court addresses this argument.

Here, there is no dispute that Clemson has a formal tenure system. Further, the system operates on a clearly enunciated policy that a teacher can remain within the system beyond a probationary period of seven years only if granted tenure. During each year of the probationary period, tenure-track professors apply for reappointment, which is considered first by the TPR Committee and separately by the Department Chair. The TPR Committee and Department Chair recommendations are considered by the Dean, who then makes a recommendation to the Provost and President. Tenure-track professors are evaluated or rated in three areas: research, teaching, and service. The ratings used, in

---

[2] 566 F. Supp. 766 (E.D. Va. 1983).

descending order, are excellent, very good, good, fair, marginal, and unsatisfactory. To obtain tenure, a professor must achieve ratings in his penultimate year of excellent in two of those areas and very good in one. In addition to the existence of this system, the Court also considers, as set forth in detail in the Report, the communication Plaintiff received each year of his probationary period after his reappointments until he was denied tenure in May 2021. (*See* ECF No. 51 at 5-7.) This evidence unequivocally shows that Defendants repeatedly informed Plaintiff, each year, that his research was not sufficient for tenure. (*Id.*) After considering all of this evidence in analyzing Plaintiff's due process claim, the Court finds that Plaintiff does not have a cognizable property interest in the form of continued employment. Therefore, for the reasons set forth in the Report and as further stated herein, the Court overrules this objection and holds that Defendants are entitled to summary judgment in their favor on Plaintiff's due process claim.

Plaintiff's **twelfth objection** is to the Report's failure to recommend that the Court decline to exercise supplemental jurisdiction over Plaintiff's breach of contract claim[3] after recommending that the Court grant summary judgment in Defendants' favor on both the breach of contract claim and all of Plaintiff's federal claims. (ECF No. 54 at 29-31.) As acknowledged by Plaintiff, trial courts enjoy wide latitude in determining whether to retain jurisdiction over state claims when all federal claims have been extinguished. (*Id.* at 29); *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). The Supreme Court has outlined four factors to guide the district court's discretion in determining whether exercising supplemental jurisdiction over state law claims is appropriate: judicial economy,

[3] The Court notes that although Plaintiff references his remaining state-law "claims" or "causes of action," he only asserts one breach of contract claim under state law.

convenience, fairness, and comity. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

Here, the Court finds that these factors weigh in favor of the Court exercising supplemental jurisdiction over Plaintiff's sole state law claim. The Court is already familiar with the facts, issues, and evidence in the case, and Plaintiff's breach of contract claim does not raise novel or complex issues of state law. Additionally, a remand to state court on Plaintiff's breach of contract claim would be a waste of judicial resources. Accordingly, the Court holds that the Magistrate Judge did not err by failing to recommend that this Court decline to exercise supplemental jurisdiction over Plaintiff's breach of contract claim.

## CONCLUSION

Based on the foregoing, the Court hereby **adopts and specifically incorporates** the Magistrate Judge's Report (ECF No. 51) into this Order; **overrules** Plaintiff's objections (ECF No. 54) based on the findings in the Report and further findings as set forth herein; and **grants** Defendants' motion for summary judgment. (ECF No. 37).

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

September 29, 2026
Charleston, South Carolina